IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mortesha Mouzon-Johnson, | ) | Civil Action No: 8:20-cv-01870-RMG-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On May 3, 2016, Plaintiff filed an application for DIB, alleging a disability onset date of June 15, 2012.[2]  [*See* R. 13.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 58–94.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on June 14, 2019, ALJ Ronald Sweeda conducted a de novo hearing on Plaintiff's claim.  [R. 34–57.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]The application does not appear to be included in the record before the Court.

The ALJ issued a decision on June 28, 2019, finding Plaintiff not disabled under the Social Security Act (the "Act").  [R. 10–33.]  At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2018, and had not engaged in substantial gainful activity during the period from her alleged onset date of June 15, 2012, through her date last insured of December 31, 2018.  [R. 15, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe combination impairments: asthma, obesity, Bell's palsy, degenerative joint disease ("DJD") of the left shoulder, and allergic rhinitis. [R. 15, Finding 3.]   The ALJ noted Plaintiff had the following non-severe impairments: migraine headaches, hypertension, and postpartum thrombotic trombocytopenic purpura. [R. 16.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 16, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> [T]o perform light work[4] as defined in 20 CFR 404.1567(b) except that she can never climb ladder[s] or scaffolds.  She can do no overhead reaching with her left upper extremity.  The claimant can frequently handle and finger with her non-dominant left upper extremity.  She can have no exposure to temperature extremes, high humidity, concentrated pulmonary irritants, or work hazards.

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[4]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday.

[R. 18, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work as a chemist/lab technician.  [R. 25–26, Finding 6]. However, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational export, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 26, Finding 10.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from June 15, 2012, the alleged onset date, through December 31, 2018, the date last insured.  [R. 27, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Appeals Council declined review.  [R. 1–6.]  Plaintiff filed the instant action for judicial review on May 15, 2020.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded.  [Doc. 15.]  Specifically, Plaintiff contends the ALJ erred by (1) failing to evaluate, classify, or consider Plaintiff's trigeminal neuralgia and vertigo when formulating the RFC [*id*. at 31–32; Doc. 17 at 1–5], and (2) improperly evaluating opinion evidence [Docs. 15 at 32–38; 17 at 5–9].

The Commissioner contends, however, that the ALJ's decision is supported by substantial evidence.  [Doc. 16.]  Specifically, the Commissioner contends that, "because the ALJ found that [Plaintiff] had a severe combination of impairments, resolving step two in [her] favor, the fact that he did not assess each [of the] diagnoses . . . at step two is harmless." [*Id*. at 11.]  Further, the Commissioner argues that substantial evidence supports the ALJ's evaluation of the opinion evidence.  [*Id*. at 15–20.]

3

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

4

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brenem v. Harris*, 621 F.2d 688, 690–91 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to

allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207.

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g);

6

*Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

has lasted or can be expected to last for a continuous period of
not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five-Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).   The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.   20 C.F.R. § 404.1520.   Through the

fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day

of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. &*

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts

to the Commissioner to produce evidence that other jobs exist in the national economy that

the claimant can perform, considering the claimant's age, education, and work experience.

*Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is

disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. § 404.1520(a); *Hall v.*

*Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

8

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

**B.     *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

9

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt.

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*

10

P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when

---

Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

12

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

13

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). Social Security Ruling ("SSR") 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms In Disability Claims, 82 Fed. Reg. 49,462, 49,464 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463. First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce" the alleged symptoms. *Id.* (quoting *Craig*, 76 F.3d at 594); *see* SSR 16-3p, 82 Fed. Reg. at 49,463. Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . or to function independently." SSR 16-3p, 82 Fed. Reg. at 49,464; *see* 20 C.F.R. § 404.1528 (noting that the ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

14

## APPLICATION AND ANALYSIS

**Opinion Evidence**

Plaintiff argues the ALJ improperly evaluated the opinion evidence and erred in rejecting the limitations suggested by Cici Carter, M.D.  [Docs. 15 at 32–33, 36–38; 17 at 5–9.]  The Court agrees.

### *Plaintiff's Description of Her Symptoms*

When asked at the hearing why she could not work, Plaintiff's first response was that she has facial weakness and pain associated with Bell's palsy[8] and trigeminal neuralgia[9]. [R. 41.]  She described her pain as being on both sides of her face, including sometimes in her jaw.  [R. 42.]  She said that the pain from her trigeminal neuralgia is fairly constant.  [R. 43.]  She also described vertigo, weakness in her left arm, sensitivity to allergens, and migraine headaches.  [R. 41–42.]  She testified that the side effects from her many medicines include nausea, fatigue, dizziness, and sleepiness.  [R. 44.]  She also said that she can sit for about two hours at a stretch and stand for 30 or 45 minutes at a time.  [*Id.*]

### *Dr. Carter's Opinion*

---

[8]Bell's palsy is "a condition in which the muscles on one side of your face become weak or paralyzed.  It affects only one side of the face at a time, causing it to droop or become stiff on that side."  WebMD/Bell's Palsy, https://www.webmd.com/brain/understanding-bells-palsy-basics (last visited Oct. 7, 2021).  Symptoms can include drooling, feeling pain in the jaw or behind the ear, headaches, reduced sense of taste, dry eyes and mouth, tinnitus, and sensitivity to sound.  *Id.*

[9]"Trigeminal neuralgia is an ongoing pain condition that affects certain nerves in your face. . . . People who have this condition say the pain might feel like an electric shock, and it can sometimes be intense."  WebMD/Trigeminal Neuralgia, https://www.webmd.com/pain-management/guide/trigeminal-neuralgia (last visited Oct. 7, 2021).

15

Dr. Carter completed a Physical RFC Questionnaire regarding Plaintiff on August 16, 2018.  [R. 1022–26.]  Dr. Carter noted that she had seen Plaintiff from May 2018 through July 2018 and that Plaintiff's diagnoses were Bell's Palsy, migraines, moderate persistent asthma, trigeminal neuralgia, left arm weakness, environmental allergies, chronic fatigue, and vertigo.  [R. 1022.]  She listed Plaintiff's symptoms as daily fatigue, shortness of breath, chronic left facial droop, dizziness, headache (intermittent migraine), left facial pain, and periodic exacerbations of asthma due to fumes.  [*Id.*]  She stated that Plaintiff experienced "left facial pain almost daily" with "no identifying precipitating factors."  [*Id.*]  Dr. Carter stated that Plaintiff's impairments had lasted or were expected to last over 12 months and that she was not a malingerer.  [R. 1023.]  She opined that Plaintiff's pain or other symptoms would constantly interfere with her attention and concentration.  [*Id.*]  Regarding stress toleration, Dr. Carter opined that "'[m]oderate stress' [wa]s okay" and explained that "[t]riggers for migraines/[headaches] can include stress."  [*Id.*]  She also opined that Plaintiff could sit for more than two hours and stand for 30–45 minutes at one time.  [R. 1024.]  Dr. Carter indicated that Plaintiff would need unscheduled breaks on an as-needed basis for dizziness and pain and that she could rarely lift 10 pounds but could frequently lift under 10 pounds.  [*Id.*]  She noted Plaintiff would have good and bad days and that she would miss work more than four days per month.  [R.1025.]  Dr. Carter indicated Plaintiff's limitations had existed since June 2012 and were permanent.  [R. 1026.]

### *Applicable Rules*

Social Security Ruling 96-2p requires that when an ALJ assesses medical opinions, her decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and . . . be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 1996 WL 374188. Moreover, ALJs are instructed to apply the factors provided in 20 C.F.R. § 404.1527[10]—including the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion—to all medical opinions. 20 C.F.R. § 404.1527(c), (f). More weight is generally given to the opinions of examining sources than to non-examining ones. *Id.* Additionally, more weight is generally given to opinions of treating sources than is given to opinions of non-treating sources, such as consultative examiners. *Id*. And, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (internal quotation marks omitted). Furthermore, the determination of whether a claimant is disabled under the Act is a legal determination and ultimately one for the Commissioner, and not a medical source, to make. 20 C.F.R. § 404.1527(d)(1) (stating "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). A medical source opinion on that issue is not entitled to any special weight. 20 C.F.R. § 404.1527(d)(3). ALJs are further prohibited from substituting their medical opinions for those of medical providers, which the Fourth Circuit

---

[10]Although the applicable rules have been amended, for claims, such as this one, that were filed before March 27, 2017, the rules in § 404.1527 apply. *See* 20 C.F.R. § 404.1520c. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply. *Id.*

recently referred to as the prohibited practice of the ALJ "playing doctor." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

### The ALJ's Relevant Findings and Analysis

As stated, the ALJ found that Plaintiff had severe impairments of asthma, obesity, Bell's palsy, DJD of the left shoulder, and allergic rhinitis.  [R. 15, Finding 3.]  The ALJ also found that Plaintiff had non-severe impairments of migraine headaches, hypertension, and postpartum thrombotic thrombocytopenic purpura.  [R. 16.]  During the RFC discussion, the ALJ noted that Plaintiff testified "that she cannot work due to Bell's palsy, trigeminal neuralgia, vertigo, left shoulder pain affecting the entire left upper extremity, and sensitivity to certain chemicals.  She experiences pain in her face as well as in her left arm and shoulder."  [R. 19.]  The ALJ summarized the medical evidence related to Plaintiff's vertigo and complaints of facial neuralgic pain as follows:

> The claimant was diagnosed with epidemic vertigo on September 27, 2012 and prescribed Antivert.  She participated in physical therapy in 2012 and 2013, for her complaints of left shoulder pain.
>
> . . .
>
> The claimant was treated by Low Country ENT for approximately 1 year beginning July 2017.  Her VNG and audiometric testing was normal.  The claimant had no evidence of vestibulopathy.  Her  vertigo had resolved.
>
> . . .
>
> The claimant saw Dr. Woodard again on June 11, 2018. . . .
>
> . . . She reported that her vertigo episodes had not been as frequent or severe.  With regard to her facial neuralgic type pain, which Dr. Woodard described as of recent onset, she was started on Nortriptyline by Dr. Bahadori and experienced symptomatic benefit.  Dr. Woodard said that if the claimant's

neuralgic pain should worsen, a treatment trial with Carbamazepine, Gabapentin, or Baclofen could be considered. The claimant was to maintain neurology follow-up with Dr. Bahadori, she could . . . return to see Dr. Woodard in the general neurology clinic on an as-needed basis.

. . .

Carolina Neurological Clinic notes indicate that the claimant was followed for vertigo and headaches. Her neurological examination indicated cranial nerves intact, face asymmetric with decreased naso-labial fold on the left side, slightly decreased strength in the left upper extremity with normal grip strength, normal strength of the lower extremities, decreased sensation in the hands left greater than right, and a gait normal. On February 21, 2019, the claimant said her headaches and dizziness were better and her trigeminal neuralgia was better too. She was taking Neurontin and off Nortriptyline. The claimant too[k] Meclizine on an as needed basis for vertigo.

. . .

. . . [O]n June 14, 2017, the claimant sought follow-up treatment with Dr. Bahadori for complaints of vertigo. The claimant said that she had been doing bridal pictures over the prior weekend and felt dizzy. Her symptoms improved with Meclizine.

[R. 19, 21, 22, 23, 24.]

Regarding Dr. Carter's opinion, the ALJ stated:

Little [weight is] accorded to Dr. Carter's opinion, as it is not supported by adverse objective physical findings. The claimant has consistently been assessed as having full strength in her extremities. For example, during a physical examination on January 23, 2019, neurologist Dr. Bahadori assessed the claimant as having full extremity strength and normal gait (Exhibits 33F, 37F).

[R. 25.] The ALJ also observed:

The claimant also complains of headaches and vertigo. Her headaches apparently responded to Nortriptyline. ENT

19

treatment records indicated negative VNG testing and no apparent cause for complaints of vertigo. Her brain and head scans are unremarkable. There is no alleged psychological impairment. While there are 3 medical opinions from treating sources[—one of which was Dr. Carter—]indicating that the claimant cannot sustain work activity, the undersigned does not find there is objective evidence supporting any of these opinions. Specifically, the [claimant] does not have an impairment that would preclude standing and walking suggested by the above [RFC] assessment. There are no physical examinations of record indicating any gait abnormalities or any motor or neurological deficits in the lower extremities. The undersigned is perplexed as to why physicians added stress limitations, as there is no underlying psychological impairment diagnosed by any physician. It is apparent that the above forms were completed as an accommodation to the claimant.

[R. 25.]

### *Discussion*

The ALJ's conclusion that Dr. Carter gave Plaintiff an overly favorable opinion as an accommodation would, if true, certainly be a basis for affording the opinion only little weight. However, the ALJ did not point to evidence that even suggested any bias on the part of Dr. Carter. Indeed, it is unclear on what basis the ALJ parted ways with Dr. Carter's view that Plaintiff's pain would prevent her from being able to have the attention and concentration even to perform simple and repetitive tasks. The ALJ barely discussed the subject of facial pain in his opinion and did not specify why he believed either that Plaintiff did not have such pain or that the pain was not so severe or frequent to interfere with Plaintiff's ability to

concentrate.[11]    Nor did he discuss the length and nature of Dr. Carter's treatment relationship with Plaintiff.

In discounting Dr. Carter's opinion, the ALJ appeared to rely primarily on the fact that Plaintiff had "full strength in her extremities."  [R. 25.]  However, it is unclear to the Court what Plaintiff's extremity strength has to do with whether Plaintiff had severe facial pain. The ALJ also appears to call into question Dr. Carter's opinion that Plaintiff could stand for only about 30 or 45 minutes at a time [*id.*], but he does not explain why he doubts that such a restriction would be appropriate for someone diagnosed with chronic fatigue or discuss why Dr. Carter was without basis in diagnosing chronic fatigue.  And the ALJ states that he is "'perplexed'" as to why Dr. Carter opined that Plaintiff needed to be limited to moderate stress when "there is no underlying psychological impairment diagnosed by any physician." [*Id*.]  But the ALJ appears not to recognize that Dr. Carter answered that question in her questionnaire when she noted that stress could be a trigger for Plaintiff's migraines. [R. 1023.]  Given the ALJ's flawed and incomplete reasoning, his finding that Dr. Carter's favorable opinion was "an accommodation to the claimant" seems unexplained at best, as does his decision to afford the opinion little weight.  For the Court to be able to conduct meaningful judicial review of the ALJ's decision, including the ALJ's evaluation of Dr.

---

[11]The Court notes that the ALJ did find that Bell's palsy was a severe impairment [R. 15, Finding 3], meaning that it significantly limits her ability to perform basic work activities. *See* 20 C.F.R. § 404.1521.  The ALJ further found that he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  [R. 19 (emphasis added).]

Carter's opinion, the ALJ must construct a "logical bridge" explaining his analysis.[12] *Monroe*

*v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation marks omitted).

Because the ALJ here not has not satisfactorily explained how the applicable rules

support his findings, the undersigned recommends reversing the ALJ's decision and

remanding for further proceedings.

**Remaining Allegations of Error**

Because the Court finds that the ALJ's analysis of Dr. Carter's opinion is a sufficient

basis to remand this matter for further consideration, the Court declines to address

Plaintiff's remaining allegations, including the allegation that the ALJ improperly evaluated

two other medical opinions. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D.

Va. 2002). However, on remand, the ALJ should consider Plaintiff's remaining allegations

of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

---

[12]The Commissioner offers post hoc justifications for how the ALJ *could have* reasonably analyzed the evidence in the record to reach the result that he did. For example, the Commissioner argues that Dr. Carter's opinion is irrelevant and speculative to the extent that she opined in 2018 as to Plaintiff's condition in as far back as 2012; that Dr. Carter's opinion is inconsistent with the opinions of Dr. Davidson and Dr. Bahadori, who were treating Plaintiff in 2012; and that Dr. Carter "had no knowledge of [Plaintiff's] functioning prior to 2018" and "also had no expertise regarding, and provided no treatment for, the diagnoses on which she based her opinion." [Doc. 16 at 16–17.] However, "[t]he court cannot look to post-hoc offerings to support the Commissioner's decision." *Canady v. Colvin*, No. 5:12-2507-KDW, 2014 WL 4063155, at *3 (D.S.C. Aug. 14, 2014); *see Grisom v. Comm'r of Soc. Sec.*, No. 8:19-cv-02443-BHH-JDA, 2020 WL 3848227, at *11 (D.S.C. June 29, 2020) ("[B]ecause the ALJ has not given any indication in the current decision that she discounted [the physician's] decision based on [the facts identified by the Commissioner on appeal], neither of [the Commissioner's] new justifications would be a proper basis for affirmance."), *Report and Recommendation adopted by* 2020 WL 3843564 (D.S.C. July 8, 2020). Because the ALJ did not address these issues, the Court will not either.

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 13, 2021
Greenville, South Carolina